UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

VOIP-PAL.COM, INC.,

    Plaintiff,

v.

TWITTER, INC.,

    Defendants.

Case No. 2:16-cv-02338-RFB-CWH

**ORDER**

### I.    INTRODUCTION

This matter is before the Court on Defendant Twitter, Inc. ("Defendant" or "Twitter")'s Motion to Change Venue. (ECF No. 27). For the reasons stated below, this motion is granted.

### II.    PROCEDURAL BACKGROUND

On October 6, 2016, Plaintiff VoIP-Pal.com, Inc. ("Plaintiff" or "VoIP-Pal.com") filed its Complaint against Defendant, alleging infringement of two patents. (ECF No. 1). On January 31, 2017, the Court entered a Stipulation to stay the case due to pending proceedings before the Patent Trial and Appeal Board ("PTAB"). (ECF No. 12). Pursuant to the Stipulation, the Court also directed the parties to file a Joint Status Report by January 26, 2018, outlining the parties' respective positions on how the case should proceed in light of the PTAB's final written decisions. The parties filed a Joint Status Report on January 26, 2018, requesting that the stay in the case be lifted. (ECF Nos. 13 & 14). On February 27, 2018, the Court lifted the stay and ordered the parties to submit a proposed pretrial order. (ECF No. 25).

Defendant filed the instant Motion to Change Venue on February 28, 2018. (ECF No. 27). Plaintiff filed its Response on March 14, 2018. (ECF No. 31). On March 21, 2018, Defendant filed

its Reply. (ECF No. 32). The Court held a hearing on the matter on July 6, 2018, and ordered Defendant to file a Supplemental Declaration to address whether Defendant has any physical equipment or leases any space in Nevada, including space for data storage, or other support equipment/hardware, within two weeks. This Order now follows.

### III. RELEVANT FACTUAL FINDINGS FOR JURISDICTION

The Court finds the following facts. Plaintiff is a Nevada corporation, with its principal place of business located at 10900 NE 4th Street, Suite 2300, Bellevue, Washington 98004. Plaintiff is in the business of Voice-over-Internet Protocol ("VoIP") technology, and owns a portfolio of VoIP-related patents and patent applications. Based on publicly available information, Plaintiff does not have any officers, directors, or employees based in Nevada. Plaintiff has no office, land, facilities, or sales in Nevada. All of the Plaintiff's patent inventors reside outside of the United States. Plaintiff's company does not generate income.

On September 24, 2013, U.S. Patent No. 8,542,815 ("the '815 patent") entitled "Producing Routing Messages for Voice Over IP Communications" was duly and legally issued with Clay Perreault, Steve Nicholson, Rod Thomson, Johan Emil Viktor Bjorsell, and Faud Arafa as the named inventors after full and fair examination. Plaintiff is the owner of all rights, title, and interest in and to the '815 patent and possesses all rights of recovery under the '815 patent. On November 3, 2015, U.S. Patent No. 9,179,005 ("the '005 patent") entitled "Producing Routing Messages for Voice Over IP Communications" was duly and legally issued with Clay Perreault, Steve Nicholson, Rod Thomson, Johan Emil Viktor Bjorsell, and Faud Arafa as the named inventors after full and fair examination. Plaintiff is the owner of all rights, title, and interest in and to the '005 patent and possesses all rights of recovery under the '005 patent.

In this lawsuit, Plaintiff alleges that Defendant violated the '815 and '005 patents by utilizing a caller dialer profile comprising a plurality of calling attributes to establish network classification criteria for routing communications such as calls and messages between callers/initiators and callees/recipients, which incorporates the patented technology. Plaintiff contends that the damages arising from this infringement amounts to $2,699,256,418.

1    Defendant is a Delaware corporation, with its principal place of business / headquarters at 1355 Market Street, Suite 900, San Francisco, California 94103. Defendant operates a global Internet platform for public self-expression and conversation that is free-of-charge and open for virtually anyone to use. Defendant's product design, development, implementation, and financial activities are centered in San Francisco. Of its 3,490 employees, 1,706 work out of the San Francisco headquarters, including 636 of its 938 software engineers. The San Francisco headquarters are also home to Defendant's key business teams, including non-technical personnel supporting product management, marketing, finance, and sales. VoIP-Pal's infringement allegations relate to what it refers to as Defendant's "messaging platform" (or the "Twitter System"). The accused technology is largely designed and built in San Francisco, and the bulk, if not all, of any relevant technical documentation, manuals, and product specifications, as well as all financial data relevant to revenue derived from Defendant's products, are located in San Francisco. Defendant does not own or lease any offices, buildings, or other facilities in Nevada, and does not directly or indirectly store any data in Nevada. It has no Nevada telephone number or local address listed on its website or in any directory. Defendant is a software company that has no physical product inventory, and its advertising and marketing are primarily conducted online. It does not store inventory or product literature in Nevada.

Defendant has a single employee, a software engineer, that lives in Nevada. Given the nature of his work—which can be performed from anywhere in the world—this particular engineer chose to live in Nevada for personal reasons and works from home. He reports to a manager in San Francisco and uses San Francisco support staff. Defendant does not own his home or pay his rent. The decision to live in Nevada was the employee's alone; Defendant does not condition his employment on his location. He is free to move out of Nevada if he desires. If he were to leave Defendant's company or Nevada, Defendant would have no plans to hire another Nevada-based employee.

**IV.    LEGAL STANDARD**

    **A.    Motion to Change or Transfer Venue**

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). However, when a district court determines that venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws[.]" <u>Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.</u>, 571 U.S. 49, 55 (2013).

For a motion to transfer, the law applicable under Section 1404(a) is the law of the circuit in which the district court sits. <u>Storage Tech. Corp. v. Cisco Sys., Inc.</u>, 329 F.3d 823, 836 (Fed. Cir. 2003). In the Ninth Circuit, "[u]nder § 1404(a), the district court has discretion 'to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" <u>Jones v. GNC Franchising, Inc.</u>, 211 F.3d 495, 498 (9th Cir. 2000) (quoting <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988)). Where a request to transfer venue does not involve a forum selection clause, the court should consider factors related to the convenience of the parties, including: "[the] relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>Atlantic Marine</u>, 571 U.S. at 63 n.6 (quoting <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 241, n.6 (1981)) (quotation marks omitted). The court may also consider the following public interest factors: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." <u>Id.</u> (quoting <u>Piper Aircraft</u>, 454 U.S. at 241 n.6) (alteration in original) (quotation

marks omitted). Additionally, the court should give some weight to the plaintiff's preferred choice of forum. Id. (citing Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)).

**V.    DISCUSSION**

For the purposes of determining venue under the patent venue statute, the location where a defendant corporation "resides" is limited to the corporation's State of incorporation. TC Heartland LLC v. Kraft Foods Grp. Brands LLC, 137 S. Ct. 1514, 1517 (2017). Courts shall not interpret the patent venue statute to consider the factors relevant for personal jurisdiction in determining whether venue is proper. Id. In light of TC Heartland, and resulting uncertainty and inconsistency among district courts, the Federal Circuit addressed the question of where a defendant corporation has a "regular and established place of business" under the patent venue statute. In re Cray, 871 F.3d 1355 (Fed. Cir. 2017). The Federal Circuit found that there are three requirements for the second prong of the § 1400(b) venue test: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." Id. at 1360. All three requirements must be satisfied for venue to be proper. Id. The Federal Circuit analyzed the legislative history underlying the patent venue statute and found that "[c]ourts should be mindful of this history in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, *e.g.*, personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases." Id. at 1361.

Defendant argues that, because it was incorporated in Delaware, only the second prong of § 1400(b) is potentially applicable. For the purposes of this motion, and without conceding liability, Defendant argues that the allegations of infringement satisfy the "committed acts of infringement" inquiry. However, Defendant argues that this district is not one where Defendant has a regular and established place of business, under In re Cray. Plaintiff does not dispute that Defendant does not reside in Nevada, but argues that the second prong of the § 1400(b) test is satisfied. Plaintiff asks this Court to recognize the nature of Defendant's business – facilitating communication over the web, in every state including Nevada – and to limit the application of In

re Cray to factual circumstances where physical products are involved. Both parties argue that the interests of justice weigh in their favor.

The Court finds that the In re Cray factors weigh in favor of transferring venue.

### A. "Place of business"

The Federal Circuit defines a "place of business" as a "physical, geographical location in the district from which the business of the defendant is carried out." In re Cray, 871 F.3d at 1362. Where a defendant stores its literature, documents, and products may be considered a place of business. The Court finds that the undisputed facts show that Defendant does not have a physical location in this district where its business is carried out. Nor does Defendant store any of its data on servers located in Nevada. The fact that one software engineer resides in this district is insufficient to establish such location. The employee works remotely and reports to a team in San Francisco. This employee is not required to live in Nevada. Plaintiff does not introduce any fact that the employee's location is available to the public or otherwise held out as a location for the operations of Defendant's business.

### B. "Regular" and "established" business

For proper venue to lie, the place of business must be "regular" such that operations are conducted "'in a steady[,] uniform[,] orderly[, and] methodical' manner." Id. (alterations in original) (citation omitted). The place of business must also be "established;" it must be settled or permanently fixed, and not transient. Id. at 1363. There are no facts to suggest that any of the business conducted out of the software engineer's home meets this requirement. The ability for the employee to move his home out of the district on his own accord, without Defendant's approval, is significant, and "cut[s] against the employee's home being considered a place of business of the defendant." Id.

### C. The place is the *defendant's* place

Thirdly, the place of business must be the *defendant's* place, "not solely a place of the defendant's employee." Id. For the place of business to be considered the defendant's, the defendant must ratify the location. A location may be considered the place of the defendant when the defendant owns, leases, or otherwise exercises control over the place; this requirement may

1 also be satisfied when the defendant conditions employment on an employee's residence in a
2 particular location or stores materials in the district "so that they can be distributed or sold from
3 that place." Id. (citations omitted). There is no dispute that Defendant neither owns nor leases the
4 software engineer's residence. There is no dispute that Defendant does not condition the engineer's
5 employment upon his location in this district; in fact, he is free to leave this district and Defendant
6 has no plans to replace him with another employee located here.

**D.   The instant case is analogous to In re Cray**

Plaintiff asks the Court to distinguish In re Cray from the instant case, because there are no physical or tangible products to be distributed or sold, and given the web-based nature of Defendant's business. The Court finds, however, that the key inquiry is not whether physical objects are involved, but rather whether the public has access to the defendant corporation through an employee or office located in the district where a suit is brought or if the public directly accesses the services of defendant through a location in the respective forum. The three-factor analysis set forth by the Federal Circuit requires the Court to consider the representations that are being made to the public based upon the location of an employee residing outside of the headquarters district. The Court finds that the bulk of the defendant's employees, product development, and overall operations are located in San Francisco, and that it does not own or lease any buildings in this district, it has no Nevada phone numbers or addresses listed for its operations, and it stores no inventory or data in Nevada. These facts demonstrate that Defendant maintains no place of business in Nevada, much less one that is both regular and established. There is no means for Defendant's consumers to access the engineer and the work that he provides for Defendant, and there is no evidence that his work is consumer-facing, which are critical for a finding that Defendant represents that it does business in the forum. As in In re Cray, Plaintiff "points to no evidence that the [employee's] location . . . [is] material" to Defendant – or to its consumers. Id. at 1365.

**E.   Fairness and the "interests of justice"**

The Court also finds that convenience and fairness to the parties requires transfer of this action. The Court recognizes that the purpose of § 1406(a) is to ensure that plaintiff's suit could

be transferred, rather than dismissed, if plaintiff make a mistake about the proper venue. <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 467 (1962). The Court finds that the factors set forth in <u>Atlantic Marine</u> support its determination that the interests of justice are best served by transferring venue to the Northern District of California.

The Court finds that the convenience of the parties is better served by transferring this action. The ease of access to sources of proof and to witnesses is greater in the district of transfer. If there is any need to view the premises where the development of the alleged infringing products takes place, it is sensible for a court in that district to order such viewing. Further, Defendant has substantially greater contacts with the Northern District of California than with this district, including most if not all of the contacts out of which this litigation arises. The litigation will therefore likely be more efficient and easier for both parties in the district of transfer.

With regard to the public interest, the court finds that the Northern District of California has a local interest in deciding controversies pertaining to the businesses and corporations operating within its borders, which outweighs the interest of this district.

The Court recognizes that Plaintiff's choice in forum is entitled some weight. However, based on the evidence provided by Defendant, Plaintiff does not appear to have any corporate executives or witnesses, aside from the software engineer, located in this district. Plaintiff has not disputed these facts. There is no dispute that the Northern District of California is closer in proximity to Plaintiff's center of operations in Bellevue, Washington. The Court also finds that the burden on the inventors of the technology in question will likely be the same regardless of whether the action proceeds in Northern California or in Nevada. Therefore, Plaintiff's choice in forum is outweighed by the factors set forth above.

For these reasons, the Court finds venue in this district improper, and grants Defendant's motion to change venue.

**VI. CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Change Venue (ECF No. 27) is GRANTED.

**IT IS FURTHER ORDERED** that Defendant's Motion to Seal (ECF No. 38) is GRANTED.

**IT IS FUTHER ORDERED** that this case is transferred to the United States District Court for the Northern District of California. The Clerk of Court shall close this case in this district.

DATED: July 23, 2018.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**